<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC ORTHOPAEDIC ASSOCIATES,<br><br>          Plaintiff,<br><br>v.<br><br>CIGNA, CIGNA CORPORATION, CIGNA HEALTHCARE, CIGNA HEALTH CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, NON-NEW JERSEY CIGNA PLANS 1-10, WEICHERT REALTORS and JOHN DOES 1-10,<br><br>          Defendants. | Civ. Action No. 20-12340 (MCA)(MAH)<br><br>**REPORT AND RECOMMENDATION** |

**I.    INTRODUCTION**

This matter is before the Court on the motion of Plaintiff Atlantic Orthopaedic Associates to remand the action to the Superior Court of New Jersey, Law Division, Morris County. Defendants oppose the motion. The District Court referred this matter to the Undersigned to issue a Report and Recommendation. This Court has considered the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the Court respectfully recommends that the District Court deny Plaintiff's motion to remand this matter.

**II.    BACKGROUND**

The factual background set forth herein is derived from the allegations of the Complaint. Plaintiff Atlantic Orthopaedic is medical practice consisting of orthopedic surgeons with visiting

rights at Morristown Medical Center in Morristown, New Jersey. Complaint, D.E. 1-1. ¶¶1, 8. Defendants Cigna and Cigna Corporation ("Cigna") are corporations that are headquartered in Connecticut, and that maintain offices in New Jersey. At all times relevant to this action, Defendant Weichert Realtors was an entity conducting business in the State of New Jersey with a principal place of business in Morris Plains New Jersey, and M.C.'s employer. As a Weichert employee, M.C. was insured for medical benefits by Cigna as part of an Open Access Medical Benefit Plan (the "Plan"). *Id.* ¶¶5-6. 12.

On May 7, 2018, M.C. was admitted to Morristown Medical Center emergency room after he had experienced, for several days, back pain, numbness and tingling in his lower extremities, and loss of bladder control. *Id.* ¶¶9-11. M.C. was diagnosed with "acute herniation with disk space collapse." *Id.* ¶13. The emergency-room physician referred M.C. to Plaintiff for care. *Id.* ¶14. On May 11, 2018, Plaintiff performed an "L4-L5 anterior lumbar interbody fusion with instrumentation" on M.C. *Id.* ¶16. On May 14, 2018, Plaintiff performed an additional spinal surgery on M.C. *Id.* ¶25.

Regarding the May 11, 2018 spinal surgery, Plaintiff submitted a claim to Cigna in the amount of $70,000. *Id.* ¶23. Cigna denied the claim. *Id.* ¶24. For the second surgery on May 14, 2018, Plaintiff submitted a claim to Cigna in the amount of $104,500. *Id.* ¶26. Cigna paid Plaintiff $721.51 for the second surgery. *Id.* ¶27.

Plaintiff appealed Cigna's denial of the claim for the May 11, 2018 surgery, and the amount paid on the claim for the May 14, 2018 surgery. *Id.* ¶29. CIGNA rejected the appeal and upheld the underpayment. *Id.* ¶33.

Plaintiff filed suit in the Superior Court of New Jersey, Morris County on July 17, 2020. The Complaint asserts claims for: breach of implied contract (Count I); breach of covenant of good

faith and fair dealing (Count II); promissory estoppel (Count III); quantum meruit (Count IV); and violations of New Jersey regulations governing payments for emergency services rendered by an out-of-network provider (Count V). Complaint, D.E. 1-1, ¶¶41-70. Defendants removed the action to this Court on September 4, 2020, based on federal question jurisdiction under 28 U.S.C. § 1331. Notice of Removal, D.E. 1. Defendants contend that the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") completely preempts Plaintiff's state-law claims. *Id.* ¶¶9, 17.

Plaintiff asserts that the Court should remand this matter because Defendants cannot satisfy either prong of the Third Circuit's test in *Pascack Valley Hospital Inc. v. Local 646 UCFW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004). Plaintiff argues its claims arise entirely under state law. Plaintiff reasons that an implied contract arose from the requirement under New Jersey law that insurers, such as Cigna, hold insureds, such as M.C., harmless from costs for emergency medical services, as well as Plaintiff's course of dealings with Cigna.

Defendants contend that ERISA completely preempts Plaintiff's claims. Defendants assert, first, that Plaintiff is an assignee of M.C.'s rights under the Plan, thereby satisfying the first prong of the *Pascack Valley* test. Second, Defendants maintain, the sole source for Plaintiff's claims is the Plan itself, thereby establishing the second prong of the *Pascack Valley* test.

### III.   ANALYSIS

As an initial matter, the Court notes that a decision to remand is dispositive. *In re U.S. Healthcare,* 159 F.3d 142, 146 (3d Cir. 1998) ("[A]n order of remand is no less dispositive than a dismissal order of a federal action for lack of subject matter jurisdiction where a parallel proceeding is pending in the state court."). Accordingly, this Court addresses Plaintiff's motion via Report and Recommendation.

Where, as here, the motion to remand is predicated on lack of subject matter jurisdiction, the burden of establishing jurisdiction rests on the party asserting that federal jurisdiction exists. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). *See also Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) ("the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court.") (citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)).

In this case, the Notice of Removal predicates jurisdiction on 28 U.S.C. § 1331. Section 1331 vests the federal district courts with jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." A case "arises under" federal law if: (i) a well pleaded complaint either sets forth claims based on federal law, or (ii) a federal statute "wholly displaces the state-law cause of action" so that the claims "even if pleaded in terms of state law, [are] in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

As set forth above, the Complaint, on its face, pleads only state-law cases of action. Typically, the pleading itself dictates whether it sets forth claims under federal or state law. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). In certain, limited circumstances, however, "the preemptive force of federal law is so powerful that it completely displaces any state law cause of action, and leaves room only for federal law for purposes of the 'well-pleaded complaint' rule." *Dawson v. Ciba-Geigy Corp.*, 145 F. Supp. 2d 565, 568 (D.N.J. 2001). *See also Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983) (instructing that preemptive force of federal law may be "so powerful as to displace entirely any state cause of action" such that state claim "necessarily 'arises under' federal law"). Complete preemption exists, and permits removal, where a federal statute entirely supplants state law, and Congress has clearly intended

4

"to permit removal despite the plaintiff's exclusive reliance on state law." *Railroad Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R.*, 858 F.2d 936, 942 (3d Cir. 1988). In the event of complete preemption, the complaint may be removable despite the absence of any federal claims in the complaint. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).

With regard to ERISA, the Supreme Court has instructed that Congress "clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 66. Under § 502(a), "a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. . . [and] may also bring a cause of action for breach of fiduciary duty…." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987).[1] ERISA preempts "all State laws insofar as they may now or hereafter relate to any employee benefit plan [.]" 29 U.S.C. § 1144(a).

In *Pascack Valley*, the Third Circuit addressed complete preemption in the context of ERISA. Relying on *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), the Third Circuit articulated a two-part test to determine whether ERISA preempts state-law claims: "[A] case is removable

---

[1] ERISA defines an "employee benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services [.]

29 U.S.C. § 1002(1).

only if (1) the [plaintiff] counsel have brought its breach of contract claim under § 502(a), and (2) no other legal duty supports the [plaintiff's] claim." *Pascack Valley Hosp.*, 388 F.3d at 400.

### A. Prong One of the *Pascack Valley* Test: Standing under § 502(a) ERISA

The first prong of the *Pascack Valley* test requires a showing that Plaintiff could have brought its claims under § 502(a). Section 502(a) provides that participants and beneficiaries are authorized to bring claims for benefits under an ERISA plan:

> § 1132. Civil enforcement
>
> (a) Persons empowered to bring a civil action. A civil action may be brought—
>
>> (1) by a participant or beneficiary—
>>
>> . . .
>>
>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1).

However, it is well settled within the Third Circuit that an "assignment from a plan participant or beneficiary" may confer derivative standing on a healthcare provider under § 502(a). *North Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). Therefore, "where a beneficiary or participant has assigned to the provider that individual's rights under the plan[,]" the healthcare provider has standing to initiate claims under § 502(a). *Pascack Valley Hosp.*, 388 F.3d at 401 n.7. *See also North Jersey Brain & Spine Ctr. v. Connecticut Gen'l Life Ins.*, Civ. No. 10-4260, 2011 WL 4737067, *5 (D.N.J. June 30, 2011) (quoting *Pascack Valley* and citing cases), *report and recommendation adopted by* 2011 WL 4737063 (D.N.J. Oct. 6, 2011).

The record in this case establishes that there was such an assignment sufficient to confer standing on Plaintiff pursuant to § 502(a). Cigna's opposition papers include a partially redacted executed and witnessed assignment of benefits form, whereby M.C. assigned his benefits to Plaintiff. Certif. of Karen Brown, Ex. A, D.E. 12-1. The form states the following in pertinent part:

### ASSIGNMENT OF BENEFITS

I hereby assign and transfer to Atlantic Orthopaedic Associates, all rights in any and all claims we have, or may have against:

Cigna
(name of insurance carrier)

For payment of insurance claims made by Atlantic Orthopaedic Associates for services rendered to me as a result of the injuries in my accident on

all dates of service
(date of accident/injury)

I authorize AOA to submit appeals, on my behalf, for any unpaid charges for services rendered to me and billed to above-mentioned insurance carrier.

*Id.*

Plaintiff does not appear to dispute the assignment of benefits, or that it confers standing on Plaintiff to seek relief under ERISA. Instead, Plaintiff contends that its claims have a separate source of authority and do not derive from the assignment. According to Plaintiff, its claims derive from Cigna's obligation to pay the usual and customary rates for the emergency care provided. *See* Complaint, D.E. 1-1, ¶¶20-21 (alleging that New Jersey law and the Affordable Care Act "require[] defendants to hold its insured harmless and this [sic] pay Plaintiff 100% of Plaintiff's billed usual, customary and reasonable ("UCR") charges, less the patient's copay, coinsurance or deductible, if any, for emergency services."); Plaintiff's Moving Brief, D.E. 9-1,

at 8 ("Plaintiff did not bring a claim under ERISA as its claims are predicated on the implied contract in fact, which was created based on the emergency medical services it provided to the patient at issue and its course of dealings with Defendants.").

The Court disagrees with Plaintiff and finds that Cigna has satisfied the first prong of the *Pascack Valley* test. Consistent with *Pascack Valley*, the foregoing assignment provides Atlantic Orthopaedic Associates with derivative standing to seek relief under ERISA. *See North Jersey Brain & Spine Ctr. v. Connecticut Gen'l Life Ins.*, 2011 WL 4737067, at *5 ("As the Third Circuit made clear in *Pascack*, the Court must determine whether a valid assignment has been made, and thus, allow a health care provider to have standing to sue under ERISA."). Therefore, even assuming that the New Jersey Administrative Code provisions on which Plaintiff relies, Complaint ¶21, confer a private right of action,[2] Plaintiff's assertion misses the point. The test under *Pascack Valley* is not whether Plaintiff can set forth a colorable state-law cause of action; it is whether Plaintiff can set forth a claim to relief under ERISA. In this case, the Court concludes that in view of the assignment from M.C., Plaintiff can do so, and the first prong is satisfied.

**B.     Prong Two of the *Pascack Valley* Test: No Other Legal Duty Exists**

There is no other legal duty to support Plaintiff's claims. Plaintiff argues that "a distinct legal duty exists as Plaintiff provided continuous, emergent, medically necessary care to M.C. which Defendants are required to pay pursuant to well-settled state and federal law." Plaintiff's

---

[2] *Advanced Orthopedics & Sports Med. Institute v. Empire Blue Cross Blue Shield*, Civ. No. 18-8697, 2018 WL 2758221, *6 n.14 (D.N.J. June 7, 2018) (rejecting plaintiff's argument that provide right of action "'is inferred by'" New Jersey administrative regulations, and reasoning that the regulations also "require[d] reference to the plan"); *Cohen v. Horizon Blue Cross Blue Shield of New Jersey,* Civ. No. 15-4525, 2017 WL 685101, *6 n.6 (D.N.J. Feb. 21, 2017) ("Plaintiff has not proven that the regulation permits a private right of action.").

Moving Brief, D.E. 9-1, at 8.  There are three problems with that argument.  First, that argument finds little basis in the Complaint itself.  The Complaint not only bears all the hallmarks of an ERISA claim, but repeatedly relies on the Plan as the source of Defendant's obligation to compensate Plaintiff.  *See, e.g.*, Complaint ¶6 (alleging that M.C., as an employee of Weichert, was entitled to health benefits under a plan (member ID -9197), and that "[a]t all relevant times, Defendants provided healthcare coverage and/or administrative services for the health insurance plan of patient M.C.  Defendants' health insurance plan provided health, medical and hospital coverage, including emergency room coverage, expressly and/or by operation of law."); ¶28 (asserting that the Plan covered Plaintiff's medical services for M.C.); ¶¶30-32 (discussing Plaintiff's appeals "pursuant to M.C.'s insurance plan"); ¶33 (characterizing Cigna's decisions on the claims for payment submitted by Plaintiff as "arbitrary and capricious"); ¶44 (alleging that Plaintiff's provision of medically necessary and emergent services to M.C. was "indisputably covered under Defendants' healthcare plan").  It is true that the Complaint also references state law, such as the New Jersey administrative code.  *See, e.g., id.* ¶¶20-21.  But reading the Complaint as a whole, the references to state law are perfunctory additions to the central premise of the Complaint--*i.e.*, Plaintiff is entitled to relief because: (1) M.C. was a participant in the Cigna Open Access Medical Benefit Plan and therefore had coverage for emergent and medically necessary care, (2) Plaintiff provided such care while Plaintiff was covered by the Plan and billed Cigna for it, (3) Cigna failed to pay the UCR for that care, and (5) Cigna's failure to pay the UCR, and its denial of Plaintiff's appeal, were arbitrary and capricious.[3]

---

[3] Plaintiff also appears to suggest that ERISA does not preempt its claims because Defendant has already made a partial payment, and this therefore dispute concerns the amount of reimbursement and not coverage.  Plaintiff's Moving Brief, D.E. 9-1, at 2, 7-8.  That argument misses the mark.  The test for ERISA preemption within the Third Circuit remains whether the removing party has satisfied the two-prong test under *Pascack Valley*.  *See North Jersey Brain &*

An examination of the individual counts of the Complaint proves the point. Counts One and Four allege breach of implied contract and quantum meruit. But none of the elements of an implied contract, such as the parties' manifestation of offer, acceptance and consideration through conduct, are plead. *See Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 818 (D.N.J. 2000) ("An implied-in-fact contract requires every element of a contract to be proved: mutual assent, consideration, legality of object, and capacity of the parties."). Count Three alleges promissory estoppel, asserting that Plaintiff detrimentally relied on Cigna's "numerous assurances and promises that it would process claims and issue benefits in accordance with the terms of the Cigna Plans through which the Cigna Insureds receive benefits." Complaint ¶54. *See also id.* ¶55. By the Complaint's own terms, the sole source of the alleged detrimental reliance is the Plan. The Complaint does not identify any relationship between Plaintiff and Cigna other than the Plan itself. Count Two, which alleges a breach of the implied covenant of good faith and fair dealing, is similarly infirm as a stand-alone state-law claim. Such a claim

---

*Spine Ctr.*, 2011 WL 4737067, at *1, 6-7 (applying *Pascack Valley* test to conclude that ERISA preempted state-law claims disputing insurer's partial payment under plan). And as set forth above, neither party has identified a separate agreement that defines the rates for medical services. Courts have recognized a distinction in rate of compensation versus right to compensation in assessing whether ERISA preempts provider claims. However, the caselaw reflects that distinction is material to a preemption analysis when a separate agreement governs the rates of compensation. *See, e.g., Premier Inpatient Partners LLC v. Aetna Health & Life Ins. Co.*, 371 F. Supp. 3d 1056, 1066 (M.D. Fla. Mar. 29, 2019) (noting that "[r]ate of payment claims tend to arise when the third-party provider has a separate agreement, whether written or oral, with the insurance company regarding their fee arrangements and the provider is disputing the rate at which it was paid for providing covered services to the insured"); *Plastic Surgery Group, P.C. v. United Healthcare Ins. Co.,* 64 F. Supp. 3d 459, 467 (E.D.N.Y. 2014) (rejecting plaintiff's argument that remand was appropriate where sole issue was amount of payment, holding that resolution of dispute over amount nonetheless required scrutiny of plan and plaintiff failed to identify duties distinct from the plan) (citing *Enigma Mgmt. Corp. v. Multiplan, Inc.,* 994 F. Supp. 2d 290, 300 (E.D.N.Y. 2014)). Here, Plaintiff has not identified any separate agreement or document that would govern the rate of compensation provided. Instead, the Complaint plainly rests on the Plan itself.

requires some course of contractual dealings between the parties to supply the covenant. Specifically, a plaintiff must prove

> (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract unless excused; (3) the defendant engaged in conduct apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury . . . .

*Wong v. Wells Fargo Bank, N.A.*, Civ. No. 14-5204, 2015 WL 6164036, *4 (D.N.J. Oct. 20, 2015) (citations omitted). The Complaint simply alleges no such contractual relationship, instead merely referencing the Plan. Therefore, the Court is satisfied that each of the Plaintiff's claims challenge the administration of benefits and requires interpretation of the Plan. *Pryzbowski v. U.S. Healthcare Inc.*, 245 F.3d 266, 273 (3d Cir. 2001).

Second, Plaintiff's argument concerning the existence of an independent legal duty relies chiefly on *Pascack Valley*. But this case differs substantially from *Pascack Valley*. In that case, the Third Circuit concluded that the defendant did not present sufficient evidence of an assignment from the beneficiaries to the plaintiff hospital. *Pascack Valley*, 388 F.3d at 401-402. Therefore, defendant failed to establish that the plaintiff hospital had standing to sue under § 502(a). Moreover, the Third Circuit identified a subscriber agreement that existed separate and apart from the plan, that defined the parties' rights, and that supplied the source for Plaintiff's claims. *Id.* at 402 ("The Hospital's claims, to be sure, are derived from an ERISA plan, and exist 'only because' of that plan. The crux of the parties' dispute is the meaning of . . . the Subscriber Agreement, which governs payment for 'Covered Persons furnished to Eligible Persons.' Were coverage and eligibility disputed in this case, interpretation of the Plan might form an 'essential part' of the Hospital's claims. Coverage and eligibility, however, are not in dispute. Instead, the resolution of this lawsuit requires interpretation of the Subscriber Agreement, not the Plan. The

Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself."). That is not the case here. As set forth above, Plaintiff holds a valid assignment of M.C.'s rights. Moreover, neither party has identified a separate written agreement or undertaking that provides Plaintiff's rights or contractually binds Defendants.[4] "As such, this case is easily distinguishable from Pascack and other cases, wherein the resolution of the parties' dispute depended entirely on the operation of separate contracts, not the ERISA plan itself." *North Jersey Brain & Spine Ctr.*, 2011 WL 4737067, at *7 (citing cases).

Finally, Plaintiff cannot reconcile its purported reliance on state law with its inclusion of Weichert Realtors as a co-defendant in each of the five counts of the Complaint. The only factual allegation against Weichert Realtors is that it sponsored the Plan. Complaint, D.E. 1-1, ¶¶6, 12. There is no allegation that Weichert Realtors was involved with the administration of the claims. Accordingly, as to Weichert Realtors, as the plan sponsor, the only cognizable claims must sound in ERISA.

For the foregoing reasons, the Court concludes that Defendants have satisfied both prongs of the *Pascack Valley* test, and that each of Plaintiff's claims is completely preempted by ERISA.

### IV.  CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the District Court: deny Plaintiff's motion to remand this matter to the Superior Court of New Jersey.

---

[4] Similarly, Plaintiff's gauzy assertion of the parties' "course of dealing," *see, e.g.,* Complaint ¶¶ 39, 55, is unavailing. The Complaint simply provides no detail about that course of dealing, much less enough to predicate contractual obligations on it.

12

The parties are reminded that they have fourteen days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and L. Civ. R. 71.1(c)(2).

**Dated: January 11, 2020**

                                               *s/ Michael A. Hammer*
                                               **United States Magistrate Judge**